FILED PAID

**DANIEL KENNEDY, formerly known as Daniel Sadek**

**3052 Rivoli**

**Newport Beach CA, 92660**

**Email : danielkennedy2469@gmail.com**

**Tel: 949-500-50000**

2026 JUL 13 PM 3: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
SANTA ANA

BY c.DVE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DANIEL KENNEDY, formerly known as DANIEL SADEK,

Plaintiff, appearing Pro Se

v.

ELIE SAMAHA;

JOSEPH (YOUSEF) MERHI;

MARKUS BARMETTLER;

OMEGA ENTERTAINMENT LTD.;and DOES 1 through 50, inclusive,

Case No. 8:26-cv-01836-JVS-(ADSx)

*Assigned to the Honorable*

COMPLAINT FOR:

1. Copyright Infringement (17 U.S.C. §§ 106, 501 & 504)

**2**. Declaratory Judgmen(28 U.S.C. §§ 2201 & 2202)

**3**. Equitable Accounting

4. Restitution, Disgorgement of Profits, and Constructive Trust

**5**. Permanent Injunction (17 U.S.C. § 502) JURY TRIAL DEMANDED

- 1 -

## I. INTRODUCTION

**1.** This is a civil action arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, seeking relief for the ongoing infringement of Plaintiff's copyrights in the motion pictures **If I Had Known I Was a Genius** and **Trainwreck: My Life as an Idiot**, also known as **American Loser** (collectively, the "Motion Pictures"). Plaintiff seeks to stop Defendants' continuing unauthorized commercial exploitation of the Motion Pictures and to recover all remedies available under the Copyright Act, including actual damages, Defendants' profits, injunctive relief, an accounting, and such other legal and equitable relief as the Court deems just and proper.

**2.** Plaintiff Daniel Kennedy, formerly known as Daniel Sadek ("Plaintiff"), is the owner of, or otherwise possesses, the copyright interests and exclusive rights at issue in this action. Plaintiff alleges that Defendants have continued to reproduce, license, distribute, market, sublicense, stream, broadcast, publicly perform, and otherwise commercially exploit the Motion Pictures without Plaintiff's authorization and in violation of Plaintiff's exclusive rights under the Copyright Act.

**3.** This action also seeks a declaration of the parties' respective rights because Defendants continue to claim, exercise, or assert rights in the Motion Pictures that Plaintiff alleges they do not lawfully possess. Unless restrained by this Court, Plaintiff alleges that Defendants will continue to exploit the Motion Pictures, interfere with Plaintiff's exclusive rights, and continue to derive revenues from the Motion Pictures.

**4.** The present controversy arises from a series of written agreements executed during 2006 and 2007 between Plaintiff, through entities under his ownership or control, and Defendant Omega Entertainment Ltd. Those agreements granted limited contractual distribution rights that were expressly subject to defined obligations, conditions, payment requirements, and other contractual limitations. Plaintiff alleges that Defendants' present-day exploitation of the Motion Pictures exceeds any rights they lawfully possess.

**5.** Plaintiff further alleges that Omega Entertainment Ltd. materially breached its contractual obligations by failing to satisfy material payment obligations, including the agreed Minimum Guarantees, resulting in disputes concerning payment, delivery, accounting, contractual performance, and the continued exercise of distribution rights. Although the parties engaged in extensive communications and settlement negotiations, no final settlement agreement was ever reached, and Plaintiff alleges that the underlying disputes remained unresolved.

**6.** Plaintiff further alleges that, notwithstanding those unresolved disputes, Defendants continued, directly or indirectly, to authorize, license, distribute, sublicense, market, stream, broadcast, and otherwise commercially exploit the Motion Pictures while failing to provide Plaintiff with a complete accounting of revenues generated from such exploitation. Plaintiff further alleges that discovery will establish the full nature and extent of the relationships among Defendants, includ-

ing Omega Entertainment Ltd., Elie Samaha, Joseph (Youssef) Merhi, Markus Barmettler, and other individuals and entities involved in the financing, licensing, distribution, sublicensing, and continuing commercial exploitation of the Motion Pictures.

7. Through this action, Plaintiff seeks permanent injunctive relief prohibiting further copyright infringement; a declaration of the parties' respective rights; recovery of actual damages and Defendants' profits pursuant to the Copyright Act; a complete accounting of all revenues derived from the Motion Pictures; restitution; disgorgement of profits; the imposition of a constructive trust where appropriate; and such other legal and equitable relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

8. This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* This Court has original subject matter jurisdiction pursuant to **28 U.S.C. §§ 1331 and 1338(a)** because this action presents claims arising under the copyright laws of the United States.

9. This Court has authority to grant declaratory relief pursuant to **28 U.S.C. §§ 2201 and 2202**.

10. This Court has supplemental jurisdiction over Plaintiff's related equitable claims, including accounting, restitution, disgorgement of profits, constructive trust, and permanent injunctive relief pursuant to **28 U.S.C. § 1367**, because those claims arise from the same nucleus of operative facts as Plaintiff's federal copyright claims.

11. Venue is proper in the United States District Court for the Central District of California pursuant to **28 U.S.C. §§ 1391(b) and 1400(a)** because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, Plaintiff resides in this District, and one or more Defendants reside, transact business, conduct business, or are otherwise subject to personal jurisdiction within this District.

12. This Court has personal jurisdiction over each Defendant because each Defendant has purposefully availed himself, herself, or itself of the privilege of conducting business within the State of California, entered into agreements affecting copyrighted works created, financed, produced, licensed, distributed, or exploited in California, committed acts giving rise to Plaintiff's claims in California, and otherwise maintains sufficient minimum contacts with California such that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

13. Upon information and belief, Defendants have committed acts of copyright infringement within this District and have derived substantial revenues from the licensing, distribution, marketing, streaming, broadcasting, sublicensing, and other commercial exploitation of the Motion Pictures within this District and throughout the United States.

## III. THE PARTIES

14. Plaintiff **Daniel Kennedy**, formerly known as **Daniel Sadek** ("Plaintiff"), is an individual residing in Orange County, California. Plaintiff is a motion picture producer, financier, and entrepreneur who developed, financed, produced, and controlled the production and commercial exploitation of the motion pictures **If I Had Known I Was a Genius** and **Trainwreck: My Life as an Idiot**, also known as **American Loser** (collectively, the "Motion Pictures"). Plaintiff alleges that he owns, or otherwise possesses, the copyrights and exclusive rights at issue in this action.

15. Defendant **Elie Samaha** is, and at all relevant times was, an individual engaged in the financing, production, licensing, distribution, marketing, and commercial exploitation of motion pictures. Plaintiff is informed and believes, and thereon alleges, that Samaha participated in, authorized, directed, controlled, approved, or financially benefited from acts relating to the Motion Pictures that are the subject of this action.

16. Defendant **Joseph (Youssef) Merhi** is, and at all relevant times was, an individual engaged in the financing, production, licensing, distribution, and commercial exploitation of motion pictures. Plaintiff is informed and believes, and thereon alleges, that Merhi participated in, authorized, directed, controlled, approved, or financially benefited from activities relating to the Motion Pictures. Plaintiff further alleges that discovery will establish the full nature and extent of Merhi's relationships with Omega Entertainment Ltd., Elie Samaha, Markus Barmettler, and other individuals or entities involved in the Motion Pictures.

17. Defendant **Markus Barmettler** is, and at all relevant times was, an officer, employee, representative, agent, or authorized representative of **Omega Entertainment Ltd.** Plaintiff alleges that Barmettler participated in negotiating, administering, interpreting, performing, and attempting to resolve disputes arising under the agreements governing the Motion Pictures and acted on behalf of Omega in matters relating to the rights at issue in this action.

18. Defendant **Omega Entertainment Ltd.** ("Omega") is, and at all relevant times was, a corporation organized under the laws of Switzerland and engaged in the international financing, licensing, marketing, distribution, and commercial exploitation of motion pictures. Plaintiff alleges that Omega entered into written agreements concerning the Motion Pictures and assumed contractual obligations relating to payment, accounting, reporting, and the exercise of distribution rights.

19. Plaintiff is presently unaware of the true names and capacities of Defendants sued herein as **DOES 1 through 50**, inclusive, and therefore sues such Defendants by fictitious names pursuant to Rule 15 of the Federal Rules of Civil Procedure and applicable law. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained through discovery.

20. Plaintiff is informed and believes, and thereon alleges, that each Defendant was the agent, employee, representative, principal, alter ego, partner, joint venturer, co-venturer, successor, predecessor, affiliate, parent, subsidiary, co-conspirator, or person acting in concert with one or more of the remaining Defendants and, in committing the acts alleged herein, acted within the course and scope of such relationship. Plaintiff further alleges that discovery will establish the

precise nature of those relationships and each Defendant's respective participation in the wrongful conduct alleged in this Complaint.

## IV. FACTUAL BACKGROUND

### A. Plaintiff and the Motion Pictures

21. Plaintiff Daniel Kennedy, formerly known as Daniel Sadek, is an independent motion picture producer, financier, and entrepreneur who developed, financed, produced, and controlled the production and commercial exploitation of the motion pictures **If I Had Known I Was a Genius** and **Trainwreck: My Life as an Idiot**, also known as **American Loser** (collectively, the "Motion Pictures").

22. During the development, financing, and production of the Motion Pictures, Plaintiff conducted business through entities under his ownership or control, including **Chicago Pictures, Inc.** and **Genius Film Company, LLC**, which were utilized in connection with the financing, production, licensing, and international distribution of the Motion Pictures.

23. Plaintiff was directly responsible for negotiating the financing, production, and international distribution arrangements for the Motion Pictures, including negotiations with Defendant Omega Entertainment Ltd. concerning the licensing of foreign distribution rights.

24. The Motion Pictures were developed and produced as commercially distributable theatrical motion pictures intended for domestic and international theatrical exhibition, television exhibition, home entertainment, digital distribution, streaming, video-on-demand, and other forms of worldwide commercial exploitation.

25. In order to obtain financing necessary to complete production of the Motion Pictures, Plaintiff entered into negotiations with Omega Entertainment Ltd., which represented that it would acquire specified international distribution rights and provide contractually guaranteed minimum payments that could be utilized in obtaining production financing.

26. Plaintiff relied upon those contractual commitments in securing financing, completing production, delivering the Motion Pictures, and entering into related financing and distribution transactions.

27. Plaintiff alleges that the Motion Pictures constitute valuable copyrighted works whose commercial value includes theatrical exhibition, television licensing, home entertainment, streaming, digital distribution, video-on-demand, airline exhibition, hotel exhibition, educational licensing, and all other forms of domestic and international commercial exploitation protected under the Copyright Act.

### B. THE OMEGA AGREEMENTS

- 5 -

**28.** In or about 2006 and 2007, Plaintiff, through entities under his ownership and control, entered into a series of written agreements with Defendant **Omega Entertainment Ltd.** concerning the international distribution and commercial exploitation of the Motion Pictures.

**29.** Those agreements included, among other documents, International Distribution Agreements, Security Agreements, Copyright Mortgages and Assignments, Memoranda of Distribution Agreements, financing instruments, Uniform Commercial Code financing statements, and related documents recorded with the United States Copyright Office.

**30.** Collectively, those agreements established the parties' respective contractual rights and obligations, including the scope of the licensed rights, territorial limitations, payment schedules, minimum guarantees, delivery obligations, accounting requirements, reporting obligations, security interests, default provisions, and conditions governing Omega's exercise of the licensed distribution rights.

**31.** The rights granted to Omega were contractual, conditional, and expressly limited by the written agreements. Plaintiff alleges that Omega did not receive an unconditional assignment or transfer of Plaintiff's copyrights or unrestricted authority to exploit the Motion Pictures beyond the scope of the agreements.

**32.** Among Omega's material contractual obligations were:

a. Payment of the negotiated Minimum Guarantees ("MGs");

b. Timely payment of all delivery installments and other sums due under the agreements;

c. Compliance with accounting and reporting obligations;

d. Performance of all material contractual obligations; and

e. Compliance with all conditions governing the exercise of the licensed distribution rights.

**33.** The combined contractual Minimum Guarantees for the Motion Pictures totaled approximately **Two Million Dollars ($2,000,000.00).**

**34.** Omega paid only the initial execution deposits totaling approximately **Five Hundred Thousand Dollars ($500,000.00)**, subject to any applicable withholding tax reserve, and failed to pay the remaining contractual Minimum Guarantee obligations and delivery payments required under the agreements.

**35.** The Motion Pictures were presold before completion for the purpose of assisting Plaintiff in obtaining production financing. Plaintiff accepted Minimum Guarantees that were substantially lower than the anticipated post-completion market value of the Motion Pictures because Omega represented that its contractual commitments would facilitate production financing.

**36.** During the negotiations and performance of the agreements, Omega represented that its contractual commitments and distribution agreements would constitute commercially acceptable and **"bankable"** distribution agreements capable of supporting production financing through commercial lenders and financial institutions.

**37.** Plaintiff relied upon those representations in entering into the agreements, structuring the financing of the Motion Pictures, and accepting reduced Minimum Guarantees.

**38.** Contrary to those representations, Plaintiff alleges that the Omega agreements did not provide the anticipated financing benefits and that Plaintiff was unable to obtain financing based upon Omega's contractual commitments, resulting in substantial financial harm and contributing to the disputes that later arose between the parties.

**39.** Disputes thereafter arose concerning Omega's failure to satisfy its remaining Minimum Guarantee obligations, delivery issues, accounting obligations, contractual performance, and the parties' respective rights under the agreements.

**40.** Plaintiff and Omega thereafter engaged in extensive communications in an effort to resolve those disputes, including direct communications between Plaintiff and Defendant Markus Barmettler, communications through counsel, efforts to resolve delivery issues identified by Omega, and written settlement negotiations.

**41.** During those settlement negotiations, Plaintiff's counsel confirmed that the combined contractual Minimum Guarantees totaled approximately **$2,000,000**, that Omega had paid only the initial execution deposits, and that Plaintiff had accepted reduced Minimum Guarantees because Omega's agreements had been represented as bankable presale contracts intended to facilitate production financing.

**42.** Plaintiff's counsel further advised Omega that, until the outstanding payment and delivery disputes were resolved, Omega was not authorized to continue exploiting the Motion Pictures beyond the rights, if any, remaining under the agreements.

**43.** Despite extensive negotiations, no final settlement agreement was ever executed, and Plaintiff alleges that Omega's payment defaults, accounting obligations, and authority to continue exercising distribution rights remained unresolved.

**44.** Plaintiff further alleges that, notwithstanding the unresolved disputes and Omega's alleged material breaches, Defendants continued, directly or indirectly, to authorize, license, distribute, sublicense, market, advertise, stream, broadcast, and otherwise commercially exploit the Motion Pictures without Plaintiff's authorization and without providing Plaintiff with a complete accounting.

**C. THE 2007–2008 DISPUTES AND OMEGA'S MATERIAL BREACH**

**45.** Following execution of the Omega agreements, disputes arose concerning Omega's performance of its contractual obligations, including payment of the remaining Minimum Guarantees,

delivery requirements, accounting obligations, and the parties' respective rights under the agreements.

**46.** Plaintiff repeatedly demanded that Omega perform its contractual payment obligations and satisfy the remaining Minimum Guarantee payments required under the written agreements. Plaintiff further advised Omega that its contractual commitments had failed to provide the anticipated financing benefits that formed a material part of the parties' business arrangement.

**47.** Omega responded by asserting that certain delivery obligations remained incomplete and contended that additional contractual payments were not yet due. Omega identified delivery items that it claimed required correction or completion before additional payments would be made.

**48.** Plaintiff, through himself, his representatives, and legal counsel, undertook substantial efforts to resolve Omega's stated delivery concerns, repeatedly requested clarification of all remaining delivery issues, and attempted in good faith to satisfy Omega's stated objections.

**49.** Throughout 2007 and 2008, Plaintiff and Omega engaged in numerous communications, meetings, and settlement negotiations in an effort to resolve the disputes without litigation. Those discussions included direct communications between Plaintiff and Markus Barmettler, communications between counsel, and written settlement proposals exchanged between the parties.

**50.** During those settlement negotiations, Plaintiff's counsel advised Omega that the Motion Pictures had been presold at reduced Minimum Guarantees because Omega's agreements had been represented as commercially acceptable financing instruments capable of supporting production financing. Plaintiff's counsel further advised that those anticipated financing benefits never materialized, resulting in substantial financial harm to Plaintiff and his production entities.

**51.** Plaintiff's counsel further confirmed that the combined contractual Minimum Guarantees totaled approximately **Two Million Dollars ($2,000,000.00)**, that Omega had paid only the initial execution deposits, and proposed a compromise reducing Omega's remaining contractual obligations in an effort to resolve the dispute without litigation.

**52.** Omega rejected the proposed settlement, and no written settlement agreement resolving the parties' disputes was ever executed.

**53.** Plaintiff alleges that Omega remained in material breach of its contractual obligations, including its payment obligations, accounting obligations, and other material duties under the agreements, and that the parties' disputes concerning their respective rights remained unresolved.

**54.** Plaintiff further alleges that, despite those unresolved disputes and alleged material breaches, Defendants continued to assert rights under the Omega agreements and continued, directly or indirectly, to authorize, negotiate, approve, license, sublicense, distribute, market, advertise, stream, broadcast, and otherwise commercially exploit the Motion Pictures.

- 8 -

**55.** Plaintiff alleges that Defendants' continued exercise of those rights exceeded the authority, if any, granted under the written agreements and forms the factual basis for Plaintiff's claims for copyright infringement, declaratory relief, accounting, restitution, disgorgement of profits, constructive trust, and permanent injunctive relief.

## D. CONTINUING COPYRIGHT INFRINGEMENT

**56.** Plaintiff realleges and incorporates by reference paragraphs 1 through 55 of this Complaint as though fully set forth herein.

**57.** Plaintiff alleges that, notwithstanding the unresolved disputes described above, the Motion Pictures have continued to be commercially exploited throughout the United States and internationally through numerous forms of distribution and exhibition, including digital streaming, video-on-demand, television exhibition, home entertainment, sublicensing, digital distribution, and other commercial means.

**58.** Plaintiff alleges that such commercial exploitation has continued for years following the disputes between the parties and, upon information and belief, continues to the present.

**59.** Plaintiff is informed and believes, and thereon alleges, that Defendants, either directly or indirectly, have continued to authorize, negotiate, approve, administer, market, advertise, license, sublicense, distribute, stream, broadcast, publicly perform, publicly display, digitally transmit, and otherwise commercially exploit the Motion Pictures without Plaintiff's authorization and beyond the scope of any rights Defendants lawfully possess.

**60.** Plaintiff is further informed and believes that Defendants have entered into, renewed, extended, modified, or performed under numerous licensing agreements, distribution agreements, streaming agreements, television agreements, video-on-demand agreements, home entertainment agreements, and other commercial arrangements concerning the Motion Pictures.

**61.** Plaintiff alleges that Defendants have received, and continue to receive, licensing fees, royalties, distribution revenues, streaming revenues, broadcast revenues, guarantees, advances, revenue-sharing payments, and other financial benefits derived from the continuing commercial exploitation of the Motion Pictures.

**62.** Despite repeated requests made over many years, Defendants have failed and refused to provide Plaintiff with complete and accurate accountings identifying all licenses, sublicense agreements, distributors, broadcasters, streaming platforms, territories, royalty statements, revenues, deductions, expenses, commissions, reserves, profits, and other financial information relating to the Motion Pictures.

**63.** Plaintiff further alleges that Defendants have continued to hold themselves out to distributors, broadcasters, streaming platforms, sublicensees, exhibitors, aggregators, and other third parties as possessing rights to commercially exploit the Motion Pictures, thereby interfering with Plaintiff's ability to license, distribute, market, or otherwise exploit the Motion Pictures.

**64.** Plaintiff alleges that each unauthorized license, sublicense, distribution agreement, streaming availability, television exhibition, digital transmission, public performance, public display, sale, rental, or other commercial exploitation of the Motion Pictures occurring without Plaintiff's authorization constitutes a separate act of copyright infringement under the Copyright Act.

**65.** As a direct and proximate result of Defendants' continuing acts, Plaintiff has suffered and continues to suffer substantial damages, including lost licensing opportunities, lost revenues, loss of control over the Motion Pictures, diminution in the value of Plaintiff's copyrights, interference with Plaintiff's exclusive rights, and other damages according to proof. Unless restrained by this Court, Plaintiff alleges that Defendants will continue committing acts of copyright infringement and continue causing Plaintiff immediate and irreparable harm.

## E. RELATIONSHIPS AMONG THE DEFENDANTS

**66.** Plaintiff is informed and believes, and thereon alleges, that Defendants **Elie Samaha, Joseph (Youssef) Merhi, Markus Barmettler, Omega Entertainment Ltd.,** and other persons and entities participated in various business relationships concerning the financing, production, licensing, distribution, marketing, accounting, and commercial exploitation of the Motion Pictures.

**67.** Plaintiff further alleges that the precise nature, scope, duration, and legal effect of those relationships are presently known primarily to Defendants and will be established through discovery, including contracts, licensing agreements, financing agreements, accounting records, royalty statements, corporate records, communications, electronic records, and other business documents.

**68.** During prior California litigation involving related transactions and the Motion Pictures, Defendant **Joseph (Youssef) Merhi** served verified responses to Requests for Admission and other verified discovery concerning his business relationships and involvement with matters relating to the Motion Pictures.

**69.** Plaintiff alleges that those verified discovery responses are relevant to the issues presented in this action because they concern the relationships among Defendants and other persons or entities involved in the financing, production, licensing, distribution, and continuing commercial exploitation of the Motion Pictures.

**70.** Plaintiff further alleges that documentary evidence presently available, together with evidence expected to be obtained through discovery, will establish the respective roles of Defendants **Elie Samaha, Joseph (Youssef) Merhi, Markus Barmettler, Omega Entertainment Ltd.,** and additional individuals and entities involved in the financing, licensing, distribution, accounting, and continued commercial exploitation of the Motion Pictures.

**71.** Plaintiff is informed and believes that discovery will identify additional individuals, corporations, distributors, sublicensees, broadcasters, streaming platforms, sales agents, aggregators, financial institutions, successors, assigns, and other participants whose identities and involvement are presently unknown but whose conduct is relevant to the claims asserted herein.

**72.** Plaintiff therefore seeks discovery of all agreements, assignments, financing documents, accounting records, royalty statements, payment records, corporate records, communications, electronic communications, licensing agreements, sublicense agreements, distribution agreements, streaming agreements, television agreements, video-on-demand agreements, and all other documents sufficient to establish the complete chain of title, chain of licensing, business relationships, financial transactions, and revenues relating to the Motion Pictures.

**FIRST CAUSE OF ACTION**

**Copyright Infringement**

**(17 U.S.C. §§ 106, 501, and 504)**

**Against All Defendants**

**73.** Plaintiff realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as though fully set forth herein.

**74.** Plaintiff is the owner of, or otherwise possesses, the copyrights and exclusive rights at issue in the Motion Pictures, including the exclusive rights protected by **17 U.S.C. § 106.**

**75.** Plaintiff alleges that any rights previously granted to Defendants were contractual, limited in scope, expressly conditioned upon Defendants' performance of the parties' written agreements, and did not authorize Defendants to continue exploiting the Motion Pictures beyond the rights, if any, remaining under those agreements.

**76.** Plaintiff further alleges that Defendants' authority, if any, to continue exploiting the Motion Pictures was limited by the express terms and conditions of the parties' agreements and did not permit the continuing unauthorized commercial exploitation alleged herein.

**77.** Plaintiff is informed and believes, and thereon alleges, that Defendants, either directly or through agents, affiliates, successors, distributors, sublicensees, broadcasters, streaming platforms, aggregators, licensees, or other third parties acting under their authority or with their knowledge, have continued to reproduce, distribute, publicly perform, publicly display, digitally transmit, license, sublicense, market, advertise, stream, broadcast, and otherwise commercially exploit the Motion Pictures.

**78.** Upon information and belief, Defendants have continued to negotiate, approve, authorize, renew, extend, perform under, or otherwise benefit from licensing agreements, distribution agreements, streaming agreements, television agreements, video-on-demand agreements, home entertainment agreements, and other commercial arrangements concerning the Motion Pictures.

**79.** Plaintiff alleges that Defendants have received, and continue to receive, royalties, licensing fees, advances, guarantees, distribution revenues, streaming revenues, television revenues, digital distribution revenues, home entertainment revenues, and other financial benefits derived from the continuing commercial exploitation of the Motion Pictures.

**80.** Plaintiff further alleges that Defendants have failed and refused to provide Plaintiff with complete and accurate accountings identifying all licenses, sublicense agreements, royalty statements, revenues, expenses, deductions, commissions, reserves, profits, and all other financial information relating to the Motion Pictures.

**81.** Each unauthorized reproduction, distribution, public performance, public display, digital transmission, license, sublicense, stream, broadcast, sale, rental, marketing, advertisement, or other commercial exploitation of the Motion Pictures occurring without Plaintiff's authorization constitutes a separate act of copyright infringement under **17 U.S.C. §§ 106 and 501**.

**82.** Plaintiff has repeatedly objected to Defendants' continuing exploitation of the Motion Pictures and has demanded recognition of Plaintiff's rights together with complete accountings concerning the commercial exploitation of the Motion Pictures. Despite those demands, Defendants have continued their exploitation of the Motion Pictures.

**83.** As a direct and proximate result of Defendants' continuing acts of copyright infringement, Plaintiff has suffered and continues to suffer substantial damages, including, but not limited to, loss of licensing opportunities, loss of revenues, loss of control over the Motion Pictures, diminution in the value of Plaintiff's copyrights, interference with Plaintiff's exclusive rights, and additional damages according to proof.

**84.** Plaintiff further alleges that Defendants' infringement is continuing in nature. Unless enjoined by this Court, Defendants will continue to infringe Plaintiff's copyrights, continue to exploit the Motion Pictures, continue to interfere with Plaintiff's exclusive rights, and continue to generate revenues from the Motion Pictures.

**85.** Pursuant to **17 U.S.C. §§ 502, 503, and 504**, Plaintiff is entitled to recover all remedies authorized by the Copyright Act, including injunctive relief, actual damages, Defendants' profits attributable to the infringement, impoundment or other relief authorized by statute where appropriate, costs of suit, attorneys' fees where authorized by law, prejudgment and post-judgment interest as permitted by law, and such further legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**

**Declaratory Judgment**

**(28 U.S.C. §§ 2201 and 2202)**

**Against All Defendants**

**86.** Plaintiff realleges and incorporates by reference paragraphs 1 through 85 of this Complaint as though fully set forth herein.

**87.** An actual, present, and justiciable controversy exists between Plaintiff and Defendants concerning the ownership of the copyrights, the scope of the parties' respective rights, and the con-

tinuing authority, if any, of Defendants to license, distribute, market, sublicense, stream, broadcast, publicly perform, publicly display, digitally transmit, or otherwise commercially exploit the Motion Pictures.

88. Plaintiff alleges that he owns, or otherwise possesses, the copyrights and exclusive rights at issue in the Motion Pictures and that Defendants have asserted, exercised, or continue to exercise rights adverse to Plaintiff's ownership interests.

89. Plaintiff further alleges that Defendants continue to claim authority, directly or indirectly, to exploit the Motion Pictures despite Plaintiff's repeated objections and despite the unresolved disputes concerning the parties' respective contractual rights and obligations.

90. Because Defendants continue to assert rights adverse to Plaintiff's claimed ownership and exclusive rights, Plaintiff has been prevented from freely negotiating licenses, entering into distribution agreements, exploiting the Motion Pictures, and otherwise exercising the exclusive rights afforded by the Copyright Act.

91. The controversy between the parties is real, immediate, substantial, and continuing. Defendants continue to commercially exploit the Motion Pictures while simultaneously asserting rights that Plaintiff alleges they do not lawfully possess.

92. Plaintiff seeks a judicial declaration determining:

a. That Plaintiff owns, or otherwise possesses, the copyrights and exclusive rights at issue in the Motion Pictures;

b. The respective rights, if any, of each Defendant concerning the Motion Pictures;

c. Whether Defendants possess any continuing authority to license, distribute, market, sublicense, stream, broadcast, publicly perform, publicly display, digitally transmit, or otherwise commercially exploit the Motion Pictures;

d. Whether Defendants have exceeded the scope of any rights previously granted under the parties' written agreements; and

e. The respective ownership interests, if any, arising from any assignment, mortgage, security agreement, memorandum, license, sublicense, or other transaction concerning the Motion Pictures.

93. Plaintiff further requests a declaration determining the rights and obligations of the parties concerning all existing and future licenses, distribution agreements, streaming agreements, television agreements, video-on-demand agreements, home entertainment agreements, royalty obligations, accounting obligations, and all other agreements relating to the Motion Pictures.

94. A judicial declaration will terminate the uncertainty and controversy giving rise to this action, clarify the parties' respective rights and obligations, prevent future disputes, and permit

Plaintiff to fully exercise and protect the copyrights and exclusive rights associated with the Motion Pictures.

**THIRD CAUSE OF ACTION**

**Equitable Accounting**

**Against All Defendants**

95. Plaintiff realleges and incorporates by reference paragraphs 1 through 94 of this Complaint as though fully set forth herein.

96. Plaintiff alleges that Defendants have received, and continue to receive, substantial revenues, royalties, licensing fees, advances, guarantees, streaming revenues, television revenues, digital distribution revenues, home entertainment revenues, and other financial benefits derived from the licensing, distribution, marketing, streaming, broadcasting, sublicensing, and commercial exploitation of the Motion Pictures.

97. Plaintiff is informed and believes, and thereon alleges, that the books, records, contracts, financial statements, royalty statements, licensing agreements, sublicense agreements, payment records, accounting records, banking records, electronic records, and other documents reflecting the commercial exploitation of the Motion Pictures are in the exclusive possession, custody, or control of Defendants.

98. Despite repeated requests over many years, Defendants have failed and refused to provide Plaintiff with a complete and accurate accounting identifying all revenues, royalties, advances, guarantees, commissions, deductions, expenses, reserves, profits, licensing agreements, sublicense agreements, distribution agreements, streaming agreements, television agreements, video-on-demand agreements, home entertainment agreements, exhibitors, distributors, territories, broadcasters, digital platforms, and all other financial information relating to the Motion Pictures.

99. Plaintiff cannot determine the full amount of monies owed, the full extent of Defendants' commercial exploitation, or the profits attributable to the alleged copyright infringement without a complete accounting because the relevant financial information is uniquely within Defendants' possession and control.

100. Plaintiff is informed and believes that Defendants have entered into numerous agreements concerning the Motion Pictures, including licensing agreements, distribution agreements, sublicense agreements, streaming agreements, television agreements, digital distribution agreements, and other commercial transactions, the complete terms and financial details of which have never been disclosed to Plaintiff.

101. Plaintiff further alleges that Defendants have received monies from domestic and international exploitation of the Motion Pictures through various distributors, broadcasters, exhibitors,

digital platforms, streaming services, aggregators, and other commercial entities whose identities and financial relationships remain unknown to Plaintiff pending discovery.

102. Equity requires that Defendants provide a full accounting of all revenues, royalties, licensing fees, guarantees, advances, commissions, deductions, expenses, reserves, profits, contracts, accounting statements, payment records, and all other financial information relating to the Motion Pictures from the inception of the parties' agreements through the date of final judgment.

103. Plaintiff further requests that Defendants identify every entity that has licensed, distributed, marketed, streamed, broadcast, publicly performed, publicly displayed, digitally transmitted, exhibited, sublicensed, financed, or otherwise commercially exploited the Motion Pictures, together with the dates of each agreement, the territories covered, the rights granted, the compensation received, and the disposition of all revenues generated therefrom.

104. Unless Defendants are ordered to provide a complete accounting, Plaintiff will continue to suffer substantial prejudice because Plaintiff cannot accurately determine the extent of Defendants' exploitation of the Motion Pictures, the profits derived therefrom, or the damages recoverable under the Copyright Act.

105. Plaintiff therefore requests that this Court order Defendants to provide a complete equitable accounting of all revenues, royalties, licensing fees, guarantees, advances, profits, expenses, deductions, contracts, royalty statements, payment records, and all other financial information relating to the Motion Pictures, together with such additional relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**

**Restitution, Disgorgement of Profits, and Constructive Trust**

**Against All Defendants**

106. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 of this Complaint as though fully set forth herein.

107. Plaintiff alleges that Defendants have wrongfully received, retained, and benefited from revenues, royalties, licensing fees, advances, guarantees, streaming revenues, television revenues, video-on-demand revenues, home entertainment revenues, digital distribution revenues, and other monies generated from the commercial exploitation of the Motion Pictures.

108. Plaintiff further alleges that Defendants have retained monies and profits that, in equity and good conscience, belong to Plaintiff because such revenues were derived from the continued exploitation of Plaintiff's copyrighted Motion Pictures without Plaintiff's authorization.

109. Plaintiff is informed and believes, and thereon alleges, that Defendants continue to receive revenues from existing licenses, renewed licenses, streaming agreements, television agreements,

digital distribution agreements, home entertainment agreements, and other commercial arrangements concerning the Motion Pictures.

110. Plaintiff further alleges that Defendants have been unjustly enriched by retaining revenues, royalties, licensing fees, guarantees, advances, profits, and other financial benefits derived from the Motion Pictures while refusing to recognize Plaintiff's rights and while failing to provide Plaintiff with complete accountings.

111. Plaintiff is informed and believes that the amount of monies, revenues, royalties, profits, commissions, reserves, and other financial benefits wrongfully retained by Defendants cannot presently be determined because the relevant books, records, contracts, payment histories, banking records, accounting records, and financial information remain exclusively within Defendants' possession, custody, or control.

112. Equity therefore requires that Defendants disgorge all profits, revenues, royalties, licensing fees, guarantees, advances, commissions, revenue shares, and all other financial benefits attributable to the commercial exploitation of the Motion Pictures to the extent such monies are determined to have been wrongfully received.

113. Plaintiff further requests that this Court impose a constructive trust upon all revenues, royalties, licensing fees, guarantees, advances, streaming revenues, distribution proceeds, accounts receivable, contract rights, and other monies or assets traceable to the commercial exploitation of the Motion Pictures pending final judgment.

114. Plaintiff further requests restitution of all monies determined to have been wrongfully retained by Defendants, together with prejudgment interest, post-judgment interest, and such additional equitable relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**

**Permanent Injunction**

**(17 U.S.C. § 502)**

**Against All Defendants**

115. Plaintiff realleges and incorporates by reference paragraphs 1 through 114 of this Complaint as though fully set forth herein.

116. Plaintiff alleges that Defendants have engaged in, and continue to engage in, acts of copyright infringement by reproducing, licensing, sublicensing, marketing, advertising, distributing, streaming, broadcasting, publicly performing, publicly displaying, digitally transmitting, and otherwise commercially exploiting the Motion Pictures without Plaintiff's authorization and beyond any rights Defendants lawfully possess.

- 16 -

117. Plaintiff further alleges that Defendants continue to enter into, perform under, renew, extend, modify, administer, or otherwise benefit from licensing agreements, distribution agreements, streaming agreements, television agreements, video-on-demand agreements, home entertainment agreements, and other commercial arrangements concerning the Motion Pictures.

118. Unless restrained by this Court, Defendants will continue to exploit the Motion Pictures, continue to enter into new agreements concerning the Motion Pictures, continue to receive revenues derived from such exploitation, and continue to interfere with Plaintiff's exclusive rights under the Copyright Act.

119. Plaintiff has no adequate remedy at law because Defendants' continuing acts of infringement cause ongoing injury to Plaintiff's exclusive rights, continuing loss of licensing opportunities, continuing loss of revenue, continuing loss of control over the Motion Pictures, and continuing interference with Plaintiff's ability to exploit the Motion Pictures.

120. Unless permanently enjoined, Plaintiff will continue to suffer immediate and irreparable injury for which monetary damages alone are inadequate.

121. Plaintiff therefore requests that this Court permanently enjoin Defendants, and all persons acting in concert or participation with them, from directly or indirectly:

a. Reproducing the Motion Pictures or any portion thereof;

b. Licensing, sublicensing, assigning, transferring, or otherwise conveying any rights in the Motion Pictures;

c. Marketing, advertising, promoting, distributing, selling, renting, streaming, broadcasting, publicly performing, publicly displaying, digitally transmitting, exhibiting, or otherwise commercially exploiting the Motion Pictures;

d. Entering into, renewing, extending, modifying, assigning, or performing under any licensing, distribution, streaming, television, video-on-demand, home entertainment, or other commercial agreement concerning the Motion Pictures;

e. Collecting, receiving, retaining, transferring, or distributing royalties, licensing fees, guarantees, advances, revenue shares, commissions, profits, or other monies derived from the unauthorized exploitation of the Motion Pictures;

f. Representing to any distributor, broadcaster, streaming platform, exhibitor, sales agent, aggregator, licensee, sublicensee, financial institution, or any other third party that Defendants possess rights in the Motion Pictures that this Court determines they do not possess;

g. Interfering with Plaintiff's ownership, licensing, marketing, distribution, financing, or other lawful exploitation of the Motion Pictures; and

h. Otherwise infringing Plaintiff's exclusive rights under the Copyright Act.

122. Plaintiff further requests that Defendants be ordered to provide written notice of this Court's judgment and injunction to every distributor, broadcaster, streaming platform, sales agent, sublicensee, exhibitor, aggregator, financial institution, or other entity then exploiting the Motion Pictures under rights claimed through Defendants.

123. Plaintiff further requests such additional injunctive relief as this Court deems necessary and proper to prevent future acts of copyright infringement and to fully protect Plaintiff's rights under the Copyright Act.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Daniel Kennedy respectfully prays for judgment against Defendants, and each of them, as follows:

**A.** For a declaration that Plaintiff owns, or otherwise possesses, the copyrights and exclusive rights at issue in the Motion Pictures **If I Had Known I Was a Genius** and **Trainwreck: My Life as an Idiot**, also known as **American Loser**, and that Defendants possess no rights except as determined by this Court.

**B.** For a declaration identifying the respective rights and obligations of each Defendant concerning the Motion Pictures.

**C.** For a permanent injunction pursuant to **17 U.S.C. § 502** prohibiting Defendants, and all persons acting in concert with them, from reproducing, licensing, sublicensing, distributing, marketing, advertising, streaming, broadcasting, publicly performing, publicly displaying, digitally transmitting, selling, renting, or otherwise commercially exploiting the Motion Pictures without Plaintiff's authorization or other lawful authority.

**D.** For an Order requiring Defendants to cease entering into, renewing, extending, modifying, assigning, performing under, or otherwise benefiting from any licensing, distribution, streaming, television, video-on-demand, home entertainment, or other commercial agreement concerning the Motion Pictures unless authorized by Plaintiff or ordered by this Court.

**E.** For an Order requiring Defendants to provide a complete accounting of all revenues, royalties, advances, guarantees, licensing fees, sublicense fees, commissions, deductions, expenses, reserves, profits, contracts, territories, distributors, broadcasters, exhibitors, streaming platforms, digital platforms, accounting statements, payment records, and all other financial records relating to the Motion Pictures from the inception of the parties' agreements through the date of final judgment.

**F.** For recovery of Plaintiff's actual damages and Defendants' profits attributable to the copyright infringement pursuant to **17 U.S.C. § 504**, in amounts according to proof.

**G.** For restitution, disgorgement of profits, and recovery of all monies, royalties, licensing fees, guarantees, advances, revenue shares, commissions, and other financial benefits wrongfully received by Defendants.

**H.** For the imposition of a constructive trust upon all revenues, royalties, licensing fees, guarantees, advances, accounts receivable, contract rights, and other assets traceable to the commercial exploitation of the Motion Pictures, to the extent authorized by law.

**I.** For prejudgment interest and post-judgment interest as permitted by law.

**J.** For costs of suit and reasonable attorneys' fees to the extent authorized by applicable law.

**K.** For impoundment or such other relief authorized by **17 U.S.C. § 503**, if the Court determines such relief is appropriate.

**L.** For leave to amend this Complaint to identify additional defendants, distributors, sublicensees, successors, assigns, agents, or other persons whose identities become known through discovery.

**M.** For such other and further legal or equitable relief as the Court deems just and proper.

---

**JURY DEMAND**

**Plaintiff hereby demands a trial by jury on all issues so triable.**

DATED: _07-13-2026_

Respectfully submitted,

**Daniel Kennedy**, formerly known as Daniel Sadek,

**Plaintiff, Pro Se**

- 19 -